UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

RAUL PACHECO RAMIREZ,

Defendant.

Criminal Action No. 23-73-23 (CKK)

**MEMORANDUM OPINION**
(January 29, 2024)

Defendant Raul Pacheco Ramirez is charged by indictment with conspiring to distribute, with others, thousands of counterfeit pills of fentanyl. On November 20, 2023, Magistrate Judge Maria Audero for the United States District Court for the Central District of California ordered Defendant detained pending trial. Before the Court is Defendant's [224] Motion for Bond Review ("Motion" or "Mot."). Defendant requests that the Court review the magistrate judge's detention order and release him on pretrial conditions. Mot. at 1, 8. Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's [224] Motion for Bond Review.

**I.   BACKGROUND**

**A. Procedural Background**

On March 9, 2023, the Government filed an indictment against Defendants Hector David Valdez, Craig Eastman, and Charles Jeffrey Taylor. ECF No. 1 (sealed). Additional defendants were indicted on April 26 and May 18, 2023. ECF No. 25; ECF No. 48 (sealed). On November 6,

---

[1] The Court's consideration has focused on:
- Defendant's Motion for Bond Review, ECF No. 224; and
- The Government's Opposition to Defendant's Motion for Review of Detention ("Gov't's Opp'n"), ECF No. 249, and exhibits therein.

1

2023, a grand jury returned a third superseding indictment, adding, among others, Defendant Ramirez. ECF No. 134 (sealed). On November 17, 2023, a grand jury returned a fourth superseding indictment in this matter. ECF No. 174. Following the third superseding indictment, Magistrate Judge Robin M. Meriweather of this jurisdiction issued an arrest warrant for Defendant, which was executed on November 16, 2023 in Los Angeles, California. ECF No. 246. That same day, Defendant appeared before Magistrate Judge Audero, who ordered Defendant to be temporarily detained. *See* ECF No. 5, Case No. 23-mj-05939 (sealed). On November 20, 2023, Defendant appeared for a detention hearing before Magistrate Judge Audero, who ordered Defendant to be detained pending trial. *See* ECF No. 10, Case No. 23-mj-05939 (sealed).

Defendant subsequently filed the pending motion on January 5, 2024, requesting this Court to review the magistrate judge's detention order and set conditions of release. ECF No. 224. The Government opposes Defendant's motion, filing its opposition on January 19, 2024. ECF No. 249.

### B. Factual Allegations

In its opposition, the Government details the allegations against Defendant, including messages exchanged between Defendant and two co-defendants in this case, photographs that purportedly depict hundreds (if not thousands) of "blue 'M-30' pills" and various "apparent firearms," and numerous messages from various individuals on social media indicating that Defendant was distributing illicit pills. Broadly, the Government alleges that Defendant was "a wholesale distributor of pills, who obtained and resold thousands upon thousands of pills at a time." Gov't's Opp'n at 25.

To support its claim, the Government recounts purported social media messages between Defendant and co-Defendant Valdez. *Id.* at 14–15. For instance, on January 19, 2023, Defendant messaged Valdez, via social media, stating, "This [expletive] told me you charging him 500 a

boat," and "Ima need a couple in a few days but I'll lyk if the tickets good." *Id.* at 15.  Valdez responded, "How many," to which Defendant stated, "8" and "But they gotta be good." *Id.*  The Government proffers that the above exchange indicates that Defendant messaged Valdez when "he heard that [] Valdez was charging $500 for 1,000 pills [(i.e., a boat)] and that he may need a couple thousand pills." *Id.*  Defendant then informed Valdez that he would purchase "8,000, if the pills were of good quality." *Id.*  According to the Government, these communications between Defendant and Valdez "continued to the subsequent week" when Defendant informed Valdez on January 25, 2023 that "Ima be ready for the 8 [boat symbol]" that week. *Id.*

In addition to speaking with Valdez, Defendant maintained a close relationship with co-Defendant Hodges.  *See id.* at 20.  Specifically, the Government claims that Defendant "sold [] Hodges pills by the thousands." *Id.*  For instance, on January 7, 2021, in an Instagram conversation purportedly between Defendant and Hodges, Defendant told Hodges: "Okay bet bro lmk what he say I can get the boats for you for 3,500$." *Id.*  The Government states that the above interaction indicates that Defendant "can get thousands of pills for [] Hodges for $3500 [sic]." *Id.*  In addition, in July 2022, Defendant sent Hodges "a photo of a USPS receipt reflecting a shipment to Suitland, MD." *Id.* at 20–21.  Hodges then asked for a picture of "beans." *Id.* at 21.  The Government states that Defendant responded with a "video of what appears to be unidentified pills of various shapes, sizes, and colors (thus suggesting 'beans' means 'pills')." *Id.*  The Government appends the following images to support its allegations.

3



*See id.* at 21–22.  The Government claims that the pills in the video sent by Ramirez "may have contained fentanyl," based on a comparison of what "rainbow fentanyl pills" appear as according to a news story.  *Id.* at 22–23.



4

*See id.* at 23. Then, on July 10, 2022, Hodges asked Defendant to "Send me those lol," and then stated "Lol them joints cool bro." *Id.* at 23. On July 13, 2022, Hodges told Ramirez, "I got myself a lane now in VA as of today for these." *Id.* The Government claims that the above interaction demonstrates that Hodges "had a way to redistribute pills sent to him by Defendant Ramirez." *Id.* at 23.

The Government also claims that Defendant's social media account "contained numerous messages about distributing pills." *Id.* at 19. For instance, on April 2, 2022, a social media account asked Defendant if he could "do a boat for 1k," to which Defendant purportedly responded, "Yea you wanna pull up." *Id.* Defendant then instructed that account user to meet him in Long Beach, California. *Id.* On May 4, 2022, Defendant messaged another social media account, stating, "My boy I got a boy," "Boat of the blues," "I'm tryna get rid of asap," and "Shoot me 850." *Id.* The Government proffers that this conversation indicates that Defendant had "1,000 blue 'M-30' fentanyl pills that he would sell for $850." *Id.* at 19–20. On August 16, 2023, Defendant messaged another social media account, stating, "You tryna make that play." *Id.* at 20. Defendant then messaged "4 boats," which, according to the Government, means that Defendant was trying to engage in a "drug transaction for 4,000 pills." *Id.* On December 23, 2022, Defendant messaged another social media account, stating "Ima come grab 15 boats every 2 weeks." *Id.* The Government proffers that Defendant "told the other Instagram account that he is going to buy 15,000 pills every two weeks." *Id.* Additional communications via social media further indicate that Defendant knew he was distributing fentanyl pills. On March 3, 2022, one social media account asked Defendant: "Dis bitches fentanyl ?," to which Defendant responded, "They the ones," "They burn n all," and "Perfect ones." *Id.*

Finally, the Government claims that Defendant was in possession of the illicit pills and

"apparent firearms," as evinced by his social media account. *See id.* at 15. The Government appends the following images, extracted from Defendant's social media account, to support its claims.









*See id.* at 16–19.

## II.    LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b).  The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C.

2011) (BAH) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (PLF)). "The motion shall be determined promptly." 18 U.S.C. § 3145(b).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including an offense "for which a maximum term of imprisonment of ten years or more is prescribed in[, *inter alia*,] the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273,

8

1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. *Id.* at 1280; *see also Salerno*, 481 U.S. at 751 (requiring the Government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.

### III. DISCUSSION

The Court concludes that the evidence presented by the Government in its briefing requires Defendant Ramirez's detention pending trial.

**A. Legal Principles**

As a threshold matter, the Court shall address the proper standard to apply at this stage of proceedings. As explained above, Defendant has appealed his detention order pursuant to 18 U.S.C. § 3145(b). Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine danger to the community and/or risk of flight. *United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

9

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or Defendant's appearance at trial. Accordingly, the Court orders that Defendant shall remain detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

### B. Nature and Circumstances of the Offense Charged

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). In this case, a rebuttable presumption of detention applies because Defendant has been charged by indictment with serious violations of the Controlled Substances Act. *See id.* § 3142(e)(3)(A); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021) (RCL). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165–66. Here, a grand jury has found probable cause that Defendant was engaged in a conspiracy to distribute more than 400 grams of fentanyl that ran from August 2020 until the present day, and the Government has presented evidence that Defendant has trafficked *thousands* of grams of fentanyl. *See* Gov't's Opp'n at 16–17, 19–20. The Court must therefore presume that no condition

10

or combination of conditions will reasonably assure Defendant's appearance as required or the safety of the community.

To rebut this presumption, Defendant must "offer some credible evidence" that he will not endanger the community or flee if released.  *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (GMH).  The Court finds that Defendant has failed to do so here.  He argues that the allegations against him suggest that he "played a very minor role in a multi-year period in which the distribution conspiracy is alleged to have taken place." Mot. at 5.  However, Defendant offers no evidence—let alone credible evidence—that he is not a danger to the community or a flight risk if released.  Notably, while Defendant states that he is charged "with a non-violent drug offense," Mot. at 5, Defendant fails to acknowledge that the Government is still alleging that he possessed and trafficked *thousands* of grams of fentanyl, *see* Gov't's Opp'n at 15–17, 19–22.  And, according to the Government, Defendant was selling the fentanyl pills, at least to an extent, "disguised and passed off as legitimate oxycodone."  Gov't's Opp'n at 25.

The Court concludes that the nature and circumstances of the offense weigh in favor of detention.  Defendant is charged with conspiring to distribute and possessing with intent to distribute 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846.  This charge carries a ten-year mandatory minimum sentence, with a maximum of life.  21 U.S.C. § 841(b)(1)(A)(vi).  As the Government puts it, "it is common knowledge that fentanyl kills," Gov't's Opp'n at 24; this investigation began with the overdose death of a D.C. resident who appears to have obtained her drugs through the member(s) of this conspiracy, *id.* at 3–4.  "Moreover, this is not the case of an individual seller working alone."  *Brown*, 538 F. Supp. 3d at 167.  The Government alleges not just a conspiracy among the defendants in this action, but vast distribution across the United States.  Therefore, Defendant's "alleged participation in the

conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger [not just] the D.C. community," but also communities throughout the United States. *Id.*

Furthermore, the additional defendants in the third superseding indictment have been ordered detained pending trial as well. *See, e.g.*, ECF No. 167; ECF No. 182 (sealed); ECF No. 184; No. 191; ECF No. 231. In each of these cases, there was sufficient evidence of fentanyl drug trafficking to warrant and support their detention. Releasing this particular defendant, who is a large-scale fentanyl trafficker in California, would be contrary to the other detention orders in effect. Therefore, the first factor weighs in favor of detention.

### C. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention. The Government presents communications between Defendant and other co-defendants in this case, including Defendants Valdez and Hodges, substantiating its claim that Defendant did in fact deal with large quantities of illicit drugs. *See* Gov't's Opp'n at 14–15, 20–24. The Government also presents communications between Defendant and various social media account, all of which suggest that Defendant did distribute thousands of pills. *See id.* at 19–20. Finally, Defendant's own social media account evinces Defendant's proclivity for possessing the drugs, as well as apparent proclivity for firearms. *See id.* at 16–19.

In all, the Court finds that the weight of this evidence is strong. *See Brown*, 538 F. Supp. 3d at 168–69. Given the evidence to date, this factor weighs in favor of detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022) (CKK).

### D. History and Characteristics of the Defendant

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3).

On the one hand, Defendant's lack of a serious criminal record weighs against pretrial detention. According to his Pretrial Services Report, Defendant has three arrests and one prior conviction. *See* Pretrial Services Report ("PSR"), ECF No. 252. His prior conviction occurred in December 2013 and involved three counts of receiving stolen property. *Id.* at 3. Although the Government claims that Defendant's criminal history suggests that Defendant is a danger, Gov't's Opp'n at 26, the Court is not persuaded by his criminal history alone. Defendant also explains that he has a history of employment, and strong ties to the Los Angeles community, including family—a fiancé, children, mother, and sister. Mot. at 6–7.

On the other hand, the Government states that Defendant appears to have been in possession, or at least has access to, various handguns and rifles, as depicted on his social media account. Gov't's Opp'n at 26. This does raise concerns for the Court, and Defendant does not address his purported possession of firearms in his Motion. *See generally* Mot. The Government further argues that Defendant's ties to Mexico also weigh in favor of detention. Gov't's Opp'n at

26. Specifically, Defendant is a citizen of Mexico, though he is in the United States legally pursuant to the DREAM Act. *See id.*

In all, given Defendant's proclivity for possessing controlled substances and alleged possession of numerous firearms, the Court finds that this factor weighs in favor of detention.

### E. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community. *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (RCL) (narcotics trafficking generally). Particularly so given the vast amount of drugs at issue here. More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious danger Defendant's release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020). And, the significant statutory penalties Defendant faces provide him with a strong incentive to flee.

Defendant maintains that he is not a danger to the community or a flight risk. *See* Mot. at 3–4. As such, Defendant proposes that he be released on the condition that he reside in a duplex in Los Angeles with his mother, fiancé, and children. *Id.* at 7. Defendant further consents to drug testing and will refrain from communicating with any of the co-defendants in this case, except in the presence of counsel. *Id.* at 4. Defendant notes that his Pretrial Services Report suggests there

14

are conditions of release that can be set to adequately supervise him. *Id.* at 3; *see* PSR, ECF No. 252, at 1; *see also* Ex. 1, ECF No. 224-1.

However, the Government has provided strong evidence indicating that Defendant knowingly and intentionally trafficked counterfeit pills in the *thousands*. *See generally* Gov't's Opp'n. Again, "it is common knowledge that fentanyl kills." *Id.* at 24. Overall, the Court's concern regarding the safety of the community or Defendant's appearance at trial is not alleviated. Therefore, this factor also weighs in favor of detention.

\* \* \*

All in all, even if Defendant could rebut the presumption of detention, the Court finds that no set of conditions can address the threat of danger he poses to the community or mitigate his risk of flight. The Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, the substantial statutory penalties he is facing, and Defendant's ties to Mexico. Therefore, the Court concludes that the Section 3142 factors require pretrial detention.

### IV.   CONCLUSION

The record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or Defendant's presence at trial if he was released pending trial. 18 U.S.C. § 3142(e)(1). As such, the Court **DENIES** Defendant's [224] Motion for Bond Review. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** January 29, 2024

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge